# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Judith Thorkelson, Karen Walhof, Gayle Aldrich, and Jean K. Stanley, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Publishing House of the Evangelical Lutheran Church in America, d/b/a Augsburg Fortress Publishers, Beth Lewis, John Rahja, Sandra Middendorf, Evangelical Lutheran Church In America, ("ELCA") and John or Jane Doe # 1 – 28,<br><br>        Defendants. | Court File No. _____<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## I. INTRODUCTION

1.      This is an action brought on behalf of a class (the "Class") of persons who were participants or beneficiaries of a defined benefit pension plan, namely the "Retirement Plan for Employees of Augsburg Fortress Publishers, Publishing House of the ELCA" (the "Plan"), from January 1, 2000 to the present (the "Class Period"). Plaintiffs bring this action under federal and state law against the Plan and its fiduciaries to recover the enormous losses suffered by the Plan and the Class as a result of Defendants' breaches of duty.

2.      Plaintiffs allege that the Plan is an "employee benefit pension plan" and a "defined benefit plan" within the meaning of sections 3(2) and 3(35) of the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C. §§ 1002(2)

421393.7

& 1002(35). Further, Plaintiffs allege that the Plan is *not* a "church plan" within the meaning of section 3(33) of ERISA, 29 U.S.C. § 1002(33) and the analogous sections of the Internal Revenue Code ("IRC"). Thus, Plaintiffs allege that the Plan and its participants are subject to the full panoply of ERISA protections, including the provisions of Title I ("Protection of Employee Benefit rights") and Title IV ("Plan Termination Insurance"). In Counts I to VI *infra* Plaintiffs state claims for relief under various sections of ERISA.

3.      In the event the Court should conclude that the Plan is a "church plan," and hence is excluded from Title I by section 4 of ERISA, 29 U.S.C. § 1003, and from Title IV by section 4021 of ERISA, 29 U.S.C. § 1321, Plaintiffs allege in Counts VII to XII *infra* alternative state law claims for relief.

4.      Plaintiffs' claims are based, in part, on documents solely in Defendants' possession, and certain of Plaintiffs' allegations are by necessity upon information and belief. At such time as Plaintiffs have had the opportunity to conduct discovery, Plaintiffs will, to the extent necessary and appropriate, seek leave to amend this Complaint to add such other additional facts as are discovered that further support Plaintiffs' claims.

## II. <u>SUBJECT MATTER JURISDICTION</u>

5.      Jurisdiction over Counts I – VI of this Complaint is based on ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1) (ERISA jurisdiction), and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      Jurisdiction over Counts VII – XII of this Complaint is based on 28 U.S.C. § 1367 (supplemental jurisdiction) and 28 U.S.C. § 1332(d)(2) (jurisdiction under the Class Action Fairness Act, "CAFA").   As to supplemental jurisdiction, the claims asserted in Counts VII – XII are so related to the claims in Counts I-VI that they form part of the same case or controversy under Article III.   As to CAFA jurisdiction, this action is a class action, the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and some members of the Class are not citizens of Minnesota.

### III. PERSONAL JURISDICTION

7.      ERISA provides for nationwide service of process.   ERISA § 502(e)(2), 29 U.S.C. 1132(e)(2).   All Defendants are residents of the United States, so the Court has personal jurisdiction over them.    This Court also has personal jurisdiction over Defendants pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure because Defendants are each subject to the jurisdiction of a court of general jurisdiction in the State of Minnesota.

### IV. VENUE

8.      As to Counts I – VI, venue is proper in this judicial district pursuant to ERISA § 502(e)(2), 29 U.S.C. 1132(e)(2), because the Plan was administered in this District, some of the fiduciary breaches for which relief is sought occurred in this District, and one or more of Defendants may be found in this District.   Venue is also proper in this District pursuant to 28 U.S.C. § 1391, because Augsburg is headquartered in this District, and systematically and continuously does business in this District, and

because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## V. PLAINTIFFS

9.     Plaintiff Judith Thorkelson was a participant in the Plan who resides in Minneapolis, Minnesota. She worked as an assistant personnel manager, manager, and director, for Defendant Publishing House of the Evangelical Lutheran Church in America, d/b/a Augsburg Fortress Publisher from 1967 until her retirement in 1993.

10.     Plaintiff Karen Walhof was a participant in the Plan who resides in Bloomington, Minnesota. She worked in several roles, including managing the Chicago office for Defendant Publishing House of the Evangelical Lutheran Church in America, d/b/a Augsburg Fortress Publisher from 1973 until 1993.

11.     Plaintiff Gayle Aldrich was a participant in the Plan who resides in Minneapolis, Minnesota. She worked as an editor and publicist of Defendant Publishing House of the Evangelical Lutheran Church in America, d/b/a Augsburg Fortress Publisher, from 1990 until 2000.

12.     Plaintiff Jean Stanley was a participant in the Plan who resides in Plymouth, Minnesota. She worked as a human resources assistant, benefits administrator, and human resources manager of Defendant Publishing House of the Evangelical Lutheran Church in America, d/b/a Augsburg Fortress Publisher, from 1986 until 2001.

## VI. <u>DEFENDANTS</u>

13.   **Defendant Augsburg.**   Defendant Publishing House of the Evangelical Lutheran Church In America, d/b/a Augsburg Fortress Publisher ("Augsburg") is a Minnesota non-profit corporation with its principal office in Minneapolis, Minnesota.

14.   Augsburg was formed at the time of the 1988 merger of the American Lutheran Church, the Lutheran Church in America, and the Association of Evangelical Lutheran Churches.   At that time, Augsburg Fortress Publishing was formed by the merger of Augsburg Publishing House (of the American Lutheran Church) and Fortress Press (of the Lutheran Church in America).

15.   Augsburg publishes, produces, distributes and sells books and similar materials of an historical, philosophical, religious, spiritual or self-help nature.   It also sells Sunday school materials, church bulletins, worship materials and clergy apparel.   Its Fortress label publishes scholarly works on history, philosophy, Biblical studies, theology, and similar topics.   Its Augsburg label publishes works of a more popular, spiritual or self-help nature.   It sells to Lutheran church congregations, and to individuals and institutions world-wide.   In 2004, it had $43,251,138 in revenue, and $26,179,789 in total assets.

16.   **Defendants John and Jane Does 1-25.**   As is explained in more detail below, Defendants John and Jane Doe #1-25 are current and former members of Augsburg's Board of Directors, all of whom had certain responsibilities with respect to the Plan, including oversight responsibilities.   Augsburg's 1987 Restated Articles of Incorporation listed twenty-one directors, but the July 11, 2006, version of the Restated

Articles of Incorporation, states the directors shall be as described in Augsburg's bylaws, which have not been filed with the Minnesota Secretary of State. Consequently, the exact number and identity of the directors involved in this case is currently unknown to Plaintiffs. They are therefore named fictitiously as John or Jane Doe 1–25. Once the identities of John or Jane Doe 1–25 are ascertained, Plaintiffs will, if appropriate, seek leave to join them under their true names. (They are sometimes referred to collectively as the "Augsburg Director Defendants.")

17. **Defendant Beth Lewis.** Defendant Beth Lewis ("Lewis") has been Augsburg's Chief Executive Officer from approximately 2001 to the present. As explained in more detail below, as Augsburg's Chief Executive Officer, Lewis had certain fiduciary responsibilities with respect to the Plan and was a member of the Plan's Pension Committee.

18. **Defendant John Rahja.** Defendant John Rahja ("Rahja") was Augsburg's Chief Financial Officer. As explained in more detail below, as Augsburg's Chief Financial Officer, Rahja had certain fiduciary responsibilities with respect to the Plan and was a member of the Plan's Pension Committee.

19. **Defendant Sandra Middendorf.** Defendant Sandra Middendorf ("Middendorf") was Augsburg's Vice President of Human Resources and Organizational Development as of November 21, 2008. As explained in more detail below, as Augsburg's Vice President, Human Resources, Middendorf had certain fiduciary responsibilities with respect to the Plan and was a member of the Plan's Pension Committee.

20.     **Pension Committee Defendants.**     Augsburg's Pension Committee ("Pension Committee") is a "Named Fiduciary" and *de facto* fiduciary of the Plan pursuant to the provisions of the Plan and was responsible for managing the Plan during the Class Period.  As explained more fully below, the Pension Committee members had full authority and power to administer and construe the Plan, subject to oversight by Augsburg and its Board of Directors.  The Plan Document states the Pension Committee is a committee of five or fewer person selected by Augsburg's Board of Directors.

21.     Augsburg sometimes referred to the Pension Committee as "the Administrative Committee."  A document entitled "Questions and Answers Regarding Termination of the Augsburg Fortress Retirement Plan," discussed in more detail *infra*, states, in relevant part that the Plan was administered by "[t]he Administrative Committee for the plan, which consisted of the company's Chief Executive Officer, Chief Financial Officer and Vice President of Human Resources."  On information and belief, the "Administrative Committee" referred to in that document is the Pension Committee.

22.     Based on the foregoing, Plaintiffs are informed and believe the Pension Committee from 2000 to the present has consisted of Augsburg's Chief Executive Officer, Chief Financial Officer and Vice President of Human Resources, as selected by Augsburg's Board of Directors.  On information and belief, therefore, the individual members of the Pension Committee during the Class Period included Lewis, Middendorf, and Rahja.

23.     **Defendants John and Jane Does 26-28.**  The identities of the remaining members of the Pension Committee are currently unknown to Plaintiffs and are therefore

named fictitiously as John and Jane Doe 26 - 28.   Once the identities of additional Pension Committee members are ascertained, Plaintiffs will, if appropriate, seek leave to join them under their true names.   (The Pension Committee members are sometimes collectively referred to as the "Pension Committee Defendants.")

24.   **Defendant Evangelical Lutheran Church in America.**   Defendant Evangelical Lutheran Church in America ("ELCA") is a Minnesota non-profit corporation with its principal office in Chicago, Illinois.   The ELCA has nearly 10,500 congregations and almost 4,500,000 members.  As is explained in more detail below, the ELCA selected Augsburg's Board of Directors, and therefore had certain oversight responsibilities with respect to those directors.

## VII. <u>DEFENDANTS' FIDUCIARY STATUS</u>

25.   Certain of the allegations in this Complaint concern Defendants' liability for breach of fiduciary duty under ERISA.  As alleged in this section, all the Defendants are ERISA fiduciaries.

### A.   The Nature of Fiduciary Status.

26.   **Named Fiduciaries**.  Every ERISA plan must have one or more "named fiduciaries."  ERISA § 402(a)(1), 29 U.S.C. § 1102(a).  The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator.  ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  One may also become a named fiduciary by being identified as a fiduciary by an employer pursuant to a procedure for such identification in the employer's plan.  ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2).

27.   *De Facto* **Fiduciaries**.   ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under section 402(a), 29 U.S.C. § 1102(a), but also any other persons who in fact perform fiduciary functions.  Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA 3(21)(A), 29 U.S.C. § 1002(21)(A).

28.   ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who actually act as fiduciaries, perform fiduciary functions, or hold fiduciary authority. ERISA makes a person a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan . . . or has any discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

29.   Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to that Plan and the Plaintiffs and other Class members under ERISA in the manner and to the extent set forth in the Plan's documents and/or through their conduct.

30.     As fiduciaries, Defendants were required by ERISA, § 404(a)(1), 29 U.S.C.
§ 1104(a)(1), to manage and administer the Plan, and the Plan's investments, solely in the
interest of the Plan's participants and beneficiaries and with the care, skill, prudence, and
diligence under the circumstances then prevailing that a prudent person acting in a like
capacity and familiar with such matters would use in the conduct of an enterprise of a like
character and with like aims.

31.     Plaintiffs do not allege that each Defendant was a fiduciary with respect to
all aspects of the Plan's management and administration.   Rather, as set forth below,
Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority
assigned to or exercised by each of them, and, as further set forth below, the claims
against each Defendant are based on such specific discretion and authority.

32.     Instead of delegating fiduciary responsibility for the Plan to external service
providers, Augsburg, the Augsburg Director Defendants, and ELCA, chose to assign the
appointment and removal of fiduciaries to the monitoring Defendants named herein.
Those persons and entities in turn selected Augsburg employees, officers and agents, to
perform most fiduciary functions.

**B.     Augsburg's Fiduciary Status.**

33.     ERISA makes the plan sponsor the default administrator and named
fiduciary.  ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

34.     Augsburg, through its Board of Directors, appointed the members of the
Pension Committee, including the Chief Executive Officer, the Chief Financial Officer,
and the Senior Vice President of Human Resources, and approved the Plan's Trustees.

Thus, according to Department of Labor regulations, Augsburg exercised a fiduciary function under ERISA.  29 C.F.R. § 2509.75-8 (D-4).

36.     In light of the foregoing duties, responsibilities and actions, Augsburg was a *de facto* fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), during the Class Period in that it exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

36.     On information and belief, Augsburg at all applicable times has exercised control over the activities of its employees that performed fiduciary functions with respect to the Plan, including the Pension Committee Defendants, and can hire, appoint, terminate, and replace such employees at will.  Augsburg is therefore responsible for the activities of its employees through traditional principles of agency and respondeat superior liability.

37.     Augsburg's employees performed their fiduciary duties in the course of their normal duties and activities as employees, and for no additional compensation. Augsburg therefore managed the Plan as a regular function of operating its business.

38.     Under basic tenets of corporate law, Augsburg is imputed with the knowledge that the Defendants had regarding the misconduct alleged herein, even if not specifically articulated or communicated to Augsburg.

39.     Augsburg, as a corporate entity, cannot act on its own without any human counterpart.  In this regard, during the Class Period, on information and belief, Augsburg

relied and continues to rely directly on the Augsburg Director Defendants, the Pension Committee Defendants, and the other individual Defendants named herein to carry out its fiduciary responsibilities under the Plans and ERISA.

40.     In light of the foregoing duties, responsibilities and actions, Augsburg was a named fiduciary of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), and a *de facto* fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), during the Class Period, in that it exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

### C.     Augsburg Director Defendants' Fiduciary Status.

41.     Under Minnesota law and Augsburg's charter and bylaws, Augsburg's Board of Directors had the authority to manage the business and affairs of Augsburg. Because Augsburg was, as alleged above, a fiduciary of the Plan during the Class Period, so, necessarily, were the Augsburg Director Defendants, who had the ultimate authority for the affairs of Augsburg.

42.     The Augsburg Director Defendants are charged with the approval and removal of the named fiduciaries suggested by the Pension Committee Defendants and the allocation of authority to those fiduciaries to control or manage the assets of the Plan, and exercised this authority. Thus, the Augsburg Director Defendants are appointing fiduciaries under ERISA.

43.     Upon information and belief, the Augsburg Director Defendants are charged with the appointment and supervision of the Chief Executive Officer, a Plan fiduciary.  They also appoint and remove the members of the Pension Committee "to administer the Plan."  Thus, the Augsburg Director Defendants exercised a fiduciary function under ERISA.  29 C.F.R. § 2509.75-8 (D-4).

44.     In light of the foregoing duties, responsibilities, and actions, the Augsburg Director Defendants were *de facto* fiduciaries within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), during the Class Period in that they exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

**D.      Lewis' Fiduciary Status.**

45.     On information and belief, Lewis was a member of the Pension Committee.  As a member of that committee, she was a named fiduciary.  In addition, she exercised discretionary authority or control respecting the management of the Plan in the same manner as described in more detail in the section of this Complaint describing the Pension Committee Defendants' Fiduciary Status.

46.     As Chief Executive Officer, Lewis had and exercised the authority to hire, supervise, or terminate the Chief Financial Officer (Rahja) and the Vice-President, Human Resources (Middendorf).  As Chief Executive Officer, she had the duty to monitor and remove those fiduciaries as employees and members of the Pension

Committee. Thus, Lewis exercised a fiduciary function under ERISA. 29 C.F.R. § 2509.75-8 (D-4).

47.    In light of the foregoing duties, responsibilities, and actions, Lewis was both a named fiduciary and a *de facto* fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), during the Class Period in that she exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

### E.    Pension Committee Defendants' Fiduciary Status.

48.    The Plan Document states,

> The Pension Committee is the 'administrator' of the Plan. Except as expressly otherwise provided herein, the Pension Committee shall control and manage the operation and administration of the Plan and make all decisions and determinations incident thereto. In carrying out its Plan responsibilities, the Pension Committee shall have discretionary authority to make factual determinations concerning eligibility for benefits and to construe the terms of the Plan. Actions of the Pension Committee shall, at the election of such Committee, be taken by action of a majority of the Pension Committee or by a person or persons designated by a majority of the Committee to take actions of the nature in question. All decisions and determinations of the Pension Committee shall be afforded the maximum deference afforded by law.

*See* Plan Document, §§ 11.1; *see also*, Plan Document, § 1.3.

49.    Similarly, the Second Plan describes the "Administrative Committee" as the administrative committee "of five or fewer persons who may be appointed and

removed by the Board to administer the Plan." Second Plan Document, § 2.4. Augsburg's Questions And Answers Regarding Termination of the Augsburg Fortress Retirement Plan (December 31, 2009) describes only a single administrative committee, suggesting this administrative committee consists of the same members as the Pension Committee.

50.    "The Pension Committee is a 'Named Fiduciary' with authority to control or manage the operation of the Plan, including control or management of the assets of the Plan." Plan Document, § 2.15. The Pension Committee may name other fiduciaries, with approval of the Board. *Id.* Such other persons "shall have such authority to control or manage the assets of the Plan, as may be allocated by the Pension Committee, with the approval of the Board." *Id.* The Plan states further, "The Pension Committee is the committee of five or fewer persons who may be appointed and removed by the Board to administer the Plan." *Id.* § 2.19.

51.    In Certain Fiduciary Provisions, the Plan Document states that a Named Fiduciary may appoint an investment manager or managers to manage any assets of the Plan. See Plan Document, § 11.2 (c).

52.    The "Administrator" shall select the trustee or insurer for the Plan, and may remove them and appoint a successor, subject to approval by the Board. Plan Document, § 9.2. "The Fund shall be for the exclusive purpose of providing benefits to Members under the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan." *Id.* § 9.6. The Administrator "shall appoint as Actuary hereunder an

individual who is an enrolled actuary, or a partnership, corporation or other organization which has as a partner or employees thereof such an enrolled actuary." *Id.* § 10.1.

53.     In a Section entitled "Certain Fiduciary Provisions," the Plan states that a Named Fiduciary may appoint an investment manager or managers to manage any assets of the Plan. *See* Plan Document, § 11.2 (c). Consequently, the Pension Committee Defendants had a fiduciary duty to monitor the trustee, the insurer, and any investment managers appointed to manage plan assets.

54.     On information and belief, in order to comply with ERISA, Augsburg, the Pension Committee Defendants exercised responsibility for communicating with participants regarding the Plan in a plan-wide, uniform, mandatory manner, by providing participants with information and materials required by ERISA. *See, e.g.*, 29 U.S.C. § 1021(a) (requiring the plan administrator to furnish to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan a summary plan description and other information). Augsburg and the Pension Committee Defendants aforementioned disseminated documents describing the Plans and related materials which, among other things, made statements or promises about future benefits and constituted fiduciary communications.

55.     In light of the foregoing duties, responsibilities, and actions, the Pension Committee Defendants were both named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), and *de facto* fiduciaries within the meaning of ERISA 3(21), 29 U.S.C. § 1002(21), in that they exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control

respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

### F.   ELCA's Fiduciary Status.

56.    Under Augsburg's charter and bylaws, ELCA had and exercised the authority to appoint and remove Augsburg's Board of Directors. The Augsburg Directors were, as alleged above, fiduciaries of the Plan during the Class Period. Since it appointed the Augsburg Directors, ELCA is an appointing fiduciary under ERISA. Thus, according to Department of Labor regulations, ELCA exercised a fiduciary function under ERISA. 29 C.F.R. § 2509.75-8 (D-4).

57.    Due to its authority as an appointing fiduciary, ELCA assumed the ERISA fiduciary duties to monitor and supervise the Augsburg Directors.

58.    In light of the foregoing duties, responsibilities, and actions, ELCA was a *de facto* fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), during the Class Period in that it exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plans.

## VIII. FACTS COMMON TO ALL COUNTS

### A.    The Nature and Purpose of the Plan

59.    The Plan was created by Augsburg for the benefit of Plaintiffs and other members of the Class, Augsburg's employees and retirees. It was established on June 1, 1939 and terminated in 2010. On information and belief, at the time of termination, it

had about 500 participants, about 175 of whom were already retired.  The instrument under which the Plan was established and maintained during the Class Period (the "Plan Document") is attached as Ex. A and is here incorporated by this reference.  An Employee Summary of the Plan (the "Plan Summary") is attached as Ex. B and is here incorporated by this reference.

60.     The Plan purports to be a "church plan," Plan Document § 1.4, and hence excluded from Title I and Title IV of ERISA.  As is alleged below, this is incorrect.  The Plan does not meet the requirements for a "church plan" and is an ordinary ERISA-regulated defined benefit plan.

61.     The Plan is a defined benefit pension plan, that is, it promises that upon retirement, a participant will received a specified, vested benefit, based on age at retirement, years of service, compensation in the years immediately preceding retirement, and other factors, for life.  For long-term employees, the benefit could be as much as 80% of final compensation.

62.     Augsburg promoted the Plan as a valuable ingredient in the total compensation of its employees, and repeatedly reassured its employees that the Plan would indeed pay the benefits promised.  For example, Augsburg issued documents entitled "Statement of Benefits" to Plaintiffs and all other Class members annually.  These statements projected the participant's monthly accrued benefits, the benefits that the participant could expect to receive at age 65 (the "Normal Retirement Age" specified in the Plan Document.)  Consistent with the Plan Document, and the whole purpose of

the Plan, the statements said "Benefits are payable at age 65 and are payable for your lifetime."

**B.     The Administration of the Plan**

63.     The Plan was administered by various fiduciaries.  The Pension Committee Defendants constituted the "Administrator" of the Plan and had plenary authority over "the operation and administration of the Plan."  Plan Document § 11.1.  As such the Pension Committee Defendants were fiduciaries of the Plan.

64.     The Augsburg Director Defendants were also fiduciaries by virtue of their responsibility for appointing and removing the members of the Pension Committee.  Plan Document § 2.19.

65.     Augsburg was also a fiduciary of the Plan because, on information and belief, the management of the Plan was handled as an ordinary corporate function of Augsburg.  Moreover, under ordinary principles of res judicata, Augsburg is responsible for the conduct of the Pension Committee Defendants, who managed the Plan in the ordinary course of their employment with Augsburg.

66.     ELCA was also a fiduciary of the Plan because it appointed the Board of Augsburg and thus that Board served at the pleasure of ELCA.  By appointing fiduciaries of the Plan, the ELCA itself assumed a fiduciary role, at least to the extent of that appointment.

**C.     The Mismanagement of the Plan**

67.     Benefits under the Plan were ultimately to be paid out of the Plan's "Fund."  *See* Plan Document § 9.1.  The monies in the Fund derived from two sources, Augsburg's

contributions to the Fund and the investment earnings on those contributions.  Under the Plan Document, Augsburg, as sponsor of the Plan, was obligated to make appropriate contributions to the Fund, based on reasonable and prudent actuarial assumptions, and the fiduciaries were obligated to ensure that these contributions were made to prudently manage the assets thus contributed.

68.     On information and belief, the Plan was fully funded as of 2001.  Soon thereafter, Augsburg began underfunding the Plan.

69.     As of December 31, 2004, Augsburg's projected pension benefit obligation was $38,087,059, and the fair value of its plan assets was $23,511,491, leaving a (negative) funding status of ($14,575,491).   The accumulated benefit obligation was $35,357,345.   Employer contributions were $797,689 in 2003, but nothing in 2004. Defendants did not disclose these facts to Plaintiffs.

70.     On February 28, 2005, the Plan was "frozen to new members."  Effective January 1, 2009, the Plan was amended to eliminate future escalator adjustments.

71.     On December 31, 2009, Augsburg announced that the Plan was severely underfunded and would be terminated on March 5, 2010.  According to Augsburg, by the end of 2009, the Plan had $24.2 million in retirement obligations, but only $8.6 million in assets.

### D.     Termination of the Plan and Repudiation of Promised Benefits

72.     In connection with the termination of the Plan, Augsburg created a new plan, the Retirement Plan II for Employees of Augsburg Fortress, Publishers, Publishing House of the ELCA (the "Second Plan").  The instrument under which the Second Plan

was established and maintained during the Class Period (the "Second Plan Document") is attached as Ex. C and is here incorporated by this reference.  An Employee Summary of the Second Plan (the "Second Plan Summary") is attached as Ex. D and is here incorporated by this reference.

73.     According to a document entitled "Questions and Answers Regarding Termination of Augsburg Fortress Retirement Plan" ("Questions and Answers"), a copy of which is attached as Ex. E and is here incorporated by this reference, Augsburg created the Second Plan "to administer all of the nonguaranteed pension benefits" in the original Plan.

74.     The Second Plan, like the original Plan, was terminated on March 5, 2010. As a result of the two terminations, and the mismanagement of the Plan that preceded terminations, the participants of the Plan have lost the bulk of their vested retirement savings.

75.     Defendants distributed lump sum payments to Class members, based on a set of formulas that obscures the result of the Plan's underfunding.

76.     As a result of Defendant's mismanagement and violations of their duties, many Class members have lost thousands of dollars, and some have sustained six-figure losses.

77.     Plaintiffs and other Class members understood regular benefits from the Plan were part of their deal with Augsburg.   Defendants broke faith with Plaintiffs and the other Class members, and destroyed this retirement fund over a nine year period,

without telling the Plaintiffs about the decline and fall of their pension until it had collapsed.

### E.   Concealment of Plaintiffs' Claims.

78.   As fiduciaries of the Plan, Defendants had a duty to disclose to Plaintiffs the condition of their pension, as well as a duty to not mislead them.  Despite this duty, Defendants misled Plaintiffs by advising them, repeatedly, that their pension benefits were secure.  For example, Defendants regularly sent benefit statements to Plaintiffs and other Class members, stating they would receive projected benefits upon their retirement, in specific amounts.  These statements were affirmative acts by Defendants that concealed Defendants' wrongful actions.  Defendants also failed to advise Plaintiffs concerning the other facts alleged in this Complaint that give rise to Plaintiff's claims against Defendants.

79.   Plaintiffs were ignorant of the condition of the Plan, as well as the facts giving rise to the claims against the Defendants.  Plaintiffs did not learn about these facts until they received the letter of December 31, 2009, from Lewis, and its attached Questions and Answers.  That letter, for the first time, advised Plaintiffs that their defined benefit pension plan had been underfunded for years.

80.   Plaintiffs' ignorance of the condition of the pension and their claims against Defendants is not attributable to lack of diligence on the part of Plaintiffs.  Plaintiffs were entitled to rely on information provided to them and widely distributed by the executives who managed their employer, and were their pension fiduciaries.  Plaintiffs have acted

promptly by filing this Complaint soon after learning of the facts giving rise to these claims.

## IX. CLASS ACTION ALLEGATIONS

81. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following class of persons similarly situated (the "Class"):

82. **Class Definition.** All persons who were participants or beneficiaries of the Plan at any time between January 1, 2000, and the present. Excluded from the Class are Defendants.

83. **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown to Plaintiffs at this time, but may be readily determined from records maintained by Augsburg. There are approximately 500 participants in the Plan.

84. **Commonality.** Common questions of fact and law exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

    a. whether the Defendants violated ERISA and/or state law, as alleged in this complaint;

    b. whether the Defendants underfunded the Plan;

    c. whether the Defendants breached their fiduciary duties by allowing the underfunding of the Plan;

d.  whether Defendants breached fiduciary duties owed to the Plan by failing to act prudently and solely in the interest of the Plan and its participants and beneficiaries;

e.  whether Defendants breached their fiduciary duties by failing to disclose to and inform the Pension Committee Defendants of all material matters which that Committee reasonably needed to know in order to fulfill its fiduciary duties to the participants and beneficiaries;

f.  whether Defendants breached their fiduciary duties by misinforming or failing to inform the Class members of the underfunding of the Plan;

g.  whether Defendants who had and exercised power to appoint other fiduciary Defendants failed to monitor and supervise their appointees;

h.  whether the Defendants are liable for knowingly participating in the breach of their co-fiduciaries;

i.  when the Defendants became aware that the Plan had become underfunded;

j.  whether the Defendants had a duty to insure the Plan for the Class members;

k.  whether Plaintiffs and Class members are entitled to injunctive relief concerning the Plan;

l.  whether Plaintiffs and the other Class members are entitled to entry of final declaratory relief concerning the Plan; and

m.  whether Plaintiffs and the other Class members are entitled to monetary damages.

85.    **Typicality.**  Plaintiffs' claims are typical of the claims of the Class, as all

Class members are similarly affected by Defendants' wrongful conduct.  Each member of

the Class had an interest in the Plan, which Defendants mismanaged, and wrongfully

repudiated.  Plaintiffs and the other Class members have or will sustain damages resulting

from that course of conduct by Defendants.

86.    **Adequacy.**  Plaintiffs will fairly and adequately represent and protect the

interests of the other Class members and have retained counsel competent and

experienced in class action and ERISA litigation.  Plaintiffs and their counsel are aware

of no conflicts of interest between Plaintiffs and other members of the Class.

87.    **Rule 23(b)(1)(B) Requirements.**  Class action status in this ERISA action

is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the

members of the Class would create a risk of inconsistent or varying adjudications with

respect to individual members of the Class which could, as a practical matter, be

dispositive of the interests of other members not parties to the actions, or substantially

impair or impede their ability to protect their interests.

88.    **Other Rule 23(b) Requirements.**  Class action status is also warranted

under the other subsections of Rule 23(b) because:  (1) prosecution of separate actions by

the members of the Class would create a risk of establishing incompatible standards of

conduct for Defendants; (2) Defendants have acted or refused to act on grounds generally

applicable to the Class, thereby making appropriate final injunctive, declaratory, or other

appropriate equitable relief with respect to the Class as a whole; and (3) questions of law

or fact common to members of the Class predominate over any questions affecting only

individual members and a class action is superior to any other possible available methods for the fair and efficient adjudication of this controversy.

## X. CLAIMS FOR RELIEF

### Count I:  ERISA:  Equitable Relief Against All Defendants

89.    Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs.

90.    ERISA § 502(a)(3), 29 U.S.C. § 1132(A)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief . . . to enforce any provisions of this title."  Pursuant to this provision, and 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57, Plaintiffs seek declaratory relief, as to all Defendants, that the Plan is not a "church plan" within the meaning of ERISA § 3(33) and thus is subject to the provisions of Title I and Title IV of ERISA.

91.    ERISA § 502(a)(3), 29 U.S.C. § 1132(A)(3), also authorizes a participant or beneficiary to bring a civil action to "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  Pursuant to these provisions, Plaintiffs seek orders (1) reforming the Plan Document to delete the provision of the Plan Document stating that it is a church plan and (2) directing the Plan's sponsor, Augsburg, to bring the Plan into compliance with ERISA, including the reporting, vesting, and funding requirements of Parts 1, 2 and 3 of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85.

92.     Under section 3(33) of ERISA, as originally adopted, 88 Stat. 829, the term
"church plan" meant "a plan established and maintained for its employees by a church or
by a convention or association of churches which is exempt from tax under section 501 of
the internal revenue code of 1954, or . . . a plan described in subparagraph (c)."  Under
this definition the Plan at issue here was not a church plan because it was not established
and maintained by a church or association of churches.  Instead, it is an ordinary single-
employer plan of a stand-alone corporation.

93.     Subsection (c) of the original statute temporarily (until 1982) extended
church plan status to "a plan in existence on January 1, 1974, . . . if it is established and
maintained by a church or convention or association of churches for its employees and
employees of one of more agencies of such church (or convention or association) for the
employees of such church (or convention or association) and the employees of one or
more agencies or such church (or convention or association), and if such church (or
convention or association) and each such agency is exempt from tax under section 501 of
the Internal Revenue Code of 1954."  Under this provision, the Plan was also not a
church plan.  The provision applies only to multiemployer plans that include a church and
a tax-exempt agency of a church.  Again, the Plan here is not such a multiemployer plan;
it is a single employer plan.

94.     The definition of "church plan" was amended, but only slightly, in section
407 of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), P.L. 96-
364.  First, the 1982 expiration date for multiemployer church plans was dropped.
Second, a "church plan" would include a "a plan maintained by an organization, whether

a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches." ERISA § 3(33)(C)(i), 29 U.S.C. 1002(33)(C)(i). The Plan at issue here is not such a plan because it is not maintained by an organization the "principal purpose or function of which is the administration or funding of a plan or program." The sponsor of the Plan at issue here is a publishing company, not an investment company. This provision, as the legislative history makes clear, was intended to include welfare and pension plan boards, such as the Southern Baptist Convention Annuity Board, the Pension Boards of United Church of Christ, the Board of Pensions of the Presbyterian Church, and similar ecclesiastical investment organizations in the definition of "church plan."

95.     Nothing in the language, history, or policy of ERISA, either as originally adopted or as amended in 1980, confers "church plan" status on a single employer plan sponsored by a church-related tax-exempt business, such as a school, hospital, or publishing company.

96.     Augsburg has underfunded the Plan since approximately 2001, as described in this Complaint. Augsburg has repudiated and purported to terminate the Plan, and refused to pay millions of dollars worth of benefits it owes or will owe to Plaintiffs and the Class members.

97.     For these reasons, the Court should enter its orders (1) declaring that the Plan is not a "church plan" within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), (2) reforming the Plan Document to reflect its correct characterization as an ordinary ERISA defined benefit plan, and (3) directing the Plan's sponsor, Augsburg, to bring the Plan into compliance with ERISA.

### Count II:  ERISA:  Breach of Duty of Prudence

98.     Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs.

99.     This Count alleges an ERISA fiduciary breach claim against the following Defendants:   Augsburg and the Pension Committee Defendants (collectively, the "Prudence Defendants").

100.    During the Class Period, the Prudence Defendants were named fiduciaries pursuant to ERISA, § 402(a)(1), 29 U.S.C. § 1102(a)(1), and *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Therefore, they were bound by the duties of loyalty, exclusivity of purpose, and prudence.

101.    The scope of the fiduciary duties and responsibilities of the Prudence Defendants included managing the Plan and its assets for the sole and exclusive benefit of the Plan's participants and beneficiaries, and with the care, skill, diligence, and prudence required by ERISA.  The Prudence Defendants, other than Augsburg, were members of, and on information and belief, participated in the meetings and activities of the Pension Committee in administering the Plan and its assets.  In the course of those meetings and activities during the Class Period, they discussed the state of the Plan to an extent not

available to Plaintiffs or other members of the Class, and consequently had the opportunity to learn about the state of the Plan and react to it.

102.   On information and belief, these Pension Committee Defendants failed to conduct a complete and impartial investigation of the problems posed by the underfunded status of the Plan.

103.   Augsburg exercised *de facto* authority and control with respect to the other Prudence Defendants, making itself fully responsible for the prudent and loyal fulfillment of the *de jure* responsibilities assigned to the Prudence Defendants, without relieving them of any responsibility.   In carrying out these responsibilities, the Prudence Defendants were required to evaluate the Plan's situation on an ongoing basis and take all necessary steps to ensure that the Plan's assets were preserved and funded and invested prudently and consistent with the Plan terms and ERISA.

104.   Contrary to their duties and obligations under the Plan Document and ERISA, the Prudence Defendants failed to loyally and prudently manage or insure the assets of the Plan.   During the Class Period, the Prudence Defendants knew or should have known Augsburg was not funding the Plan sufficiently to pay vested benefits as required by ERISA.

105.   Nevertheless, the Prudence Defendants failed to provide for payment of the vested, accrued benefits of Plaintiffs and other Class members, failed to insure the pension plan, and failed to adequately manage the Plan's assets so that adequate funds would be available to pay the Plan's obligations.

106.   As a consequence of the Prudence Defendants' breaches of fiduciary duty alleged in this Count, the Plan suffered substantial losses, and pursuant to ERISA §§ 409(a) and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (a)(3), the Prudence Defendants are liable to restore those losses to the Plan.

### Count III:  ERISA:  Breach of Duty of Disclosure to Co-Fiduciaries

107.   Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs.

108.   This Count alleges an ERISA fiduciary breach against the following Defendants:  the Pension Committee Defendants.

109.   Pursuant to the duties of prudence and loyalty that every ERISA fiduciary owes to the plans they serve pursuant to ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), such fiduciaries are required to disclose to their co-fiduciaries information that they know is unavailable to their co-fiduciaries, but that such co-fiduciaries need to protect the interests of the plan.

110.   The Pension Committee Defendants were members of, and on information and belief, participated in the meetings and activities of the Pension Committee in administering the Plan and its assets.  In the course of those meetings and activities during the Class Period, they discussed the state of the Plan to an extent not available to Plaintiffs or other members of the Class, and consequently had the opportunity to learn about the state of the pension fund for the Plan.

111.   Despite their knowledge of the underfunded state of the Plan, the Pension Committee Defendants failed to inform their Co-Fiduciaries, the Augsburg Director

Defendants, of the true and full extent of the underfunding of The Plan and the dangers posed by that underfunding to the solvency of the Plan and its ability to pay vested pension benefits.

112.    As a consequence of the Pension Committee Defendants' breaches of fiduciary duty alleged in this Count, the Plan suffered substantial losses.  If the Pension Committee Defendants had discharged their fiduciary duties to advise the Augsburg Director Defendants of the Plan's true circumstances, the significant losses sustained by the Plan would have been reduced or minimized.  Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged, the Plan became further underfunded by millions of dollars.

113.    Pursuant to ERISA §§ 409(a) and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (a)(3), the Pension Committee Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## Count IV:  ERISA:  Breach of Duty of Disclosure to Participants

114.    Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs.

115.    This Count alleges an ERISA fiduciary breach against the following Defendants:   the Pension Committee Defendants and Augsburg (collectively, the "Participant Disclosure Defendants").

116.    At all relevant times, the Participant Disclosure Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

117.   The scope of the Participant Disclosure Defendants' fiduciary duties included disseminating information to participants and beneficiaries regarding the Plan and/or its assets.

118.   The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them regarding the Plan or the Plan's assets, and to disclose information that participants need in order to exercise their rights and interests under the Plan. This duty to inform participants includes an obligation to provide participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing false information and refrain from concealing information.

119.   The Participant Disclosure Defendants breached their ERISA duty to inform participants by failing to provide complete and accurate information regarding Augsburg's contributions to the Plan and by generally conveying through statements and omissions inaccurate information regarding Augsburg's underpayments and the underfunded nature of the Plan.

120.   Misleading and inaccurate information concerning the Plan and its funding was stated in the official documents disseminated to Plaintiffs and other Plan participants.

121.   The failure of the Participant Disclosure Defendants to provide complete and accurate information regarding the funding of the Plan, affected all Plan participants in the same way in that the participants did not receive crucial, material, information regarding contribution, funding, and projected ability to pay the pensions for which the participants were working or had worked prior to leaving or retiring from Augsburg.

122.   Pursuant to ERISA §§ 409 and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (a)(3), the Participant Disclosure Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

### Count V: ERISA:  Breach of Duty of Monitoring

123.   Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs.

124.   This Count alleges fiduciary breach against the following Defendants:  the Augsburg Director Defendants, Augsburg, ELCA, and Lewis.  (Collectively, they are referred to as the "Monitoring Defendants").

125.   During the Class Period, the Monitoring Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence set forth in ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

126.   The scope of the fiduciary responsibilities of the Monitoring Defendants included the responsibility to appoint and remove, and thus, monitor the performance of other fiduciaries, as follows.  The Augsburg Director Defendants were responsible for appointing and monitoring the Lewis, the Trustee, Rahja, and Middendorf.  Alternately, Lewis was responsible for appointing and monitoring Rahja and Middendorf.   In addition, because of exercising *de facto* control over the conduct of the Chief Executive Officer, Chief Financial Officer, Vice-President – Human Resources, and by actually

controlling the appointment of the Pension Committee, Augsburg became responsible for appointing and monitoring the Pension Committee Defendants with respect to the Plan. ELCA appointed and controlled the Augsburg Board of Directors and assumed the duty to monitor and supervise them, in light of the surrounding circumstances.

127.   Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

128.   The monitoring duty further requires that appointing fiduciaries have procedures in place so that on an ongoing basis they may review and evaluate whether the "hands-on" fiduciaries and the appointing fiduciaries whom they appoint are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need).  In the absence of a viable process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to Plan participants or for deciding whether to retain or remove them.

129.   A monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in his or her possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

130.    The Monitoring Defendants breached their fiduciary monitoring duties by, among other things:  (a) failing, at least with respect to Augsburg's funding of the Plan, to monitor their appointees, to evaluate their performance, or to have any system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' imprudent actions and inaction with respect to plan funding; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of Augsburg's funding practices, and the likely impact of such practices on the value of the defined benefit Plan's ability to pay vested and promised retirement benefits; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plan's assets; and (d) failing to remove appointees whose performance was inadequate in that they continued to underfund the defined benefit plans despite their knowledge of substantial actuarial risks the plans would fail, and who thereby breached their fiduciary duties under ERISA.

131.    As a consequence of the Monitoring Defendants' breaches of fiduciary duty, the Plan sustained substantial losses.  If the Monitoring Defendants had discharged their fiduciary monitoring duties as described above, the losses suffered by the Plans would have been reduced or minimized.  Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plans, and indirectly the Plaintiffs and other Class members, lost substantial retirement funds and opportunities to earn retirement savings.

132.   Augsburg profited from its breach of this duty because its failure to perform its duty resulted in reduced contributions to the Plan, both during the Class Period, and in the future, now that Augsburg has terminated the Plan.

133.   Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), the Monitoring Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duty alleged in this Count, to disgorge profits made and to provide other equitable relief as appropriate.

### Count VI:  ERISA:  Co-Fiduciary Liability

134.   Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs.

135.   This Count alleges ERISA co-fiduciary liability against the Pension Committee Defendants, the Augsburg Board Defendants, ELCA, and Augsburg (the "Co-Fiduciary Defendants").

136.   During the Class Period the Co-Fiduciary Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

137.   ERISA § 405(a), 29 U.S.C. § 1105(a), imposes liability on a fiduciary, in addition to any liability that they may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if they know of a breach and fail to remedy it, knowingly participate in a breach, or enable a breach.  The Co-Fiduciary Defendants breached all three provisions.

138.   **Knowledge of a Breach and Failure To Remedy.**   ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he or she has knowledge of a breach by such other fiduciary, unless he or she makes reasonable efforts under the circumstances to remedy the breach. As detailed herein, each Defendant knew of certain breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

139.   The Pension Committee Defendants and the Augsburg Director Defendants were aware of the Pension Committee Defendants' failure to conduct an independent investigation, to review, and to respond to Augsburg's failure to fund the Plan sufficiently to pay vested benefits for a defined benefit retirement plan.

140.   Lewis and the other Pension Committee Defendants were aware of the failure of Lewis and the Augsburg Director Defendants to properly monitor the activities of the Pension Committee.

141.   Augsburg and ELCA were aware of the breaches of the other fiduciaries.

142.   Because Defendants knew of the breaches of other Defendants detailed above, yet failed to undertake any effort to remedy these breaches, they are each liable for those breaches.

143.   **Knowing Participation in a Breach.**   ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if they participate knowingly in, or knowingly undertake to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach.   Augsburg knowingly participated in the fiduciary

breaches of the other Prudence Defendants in that it exercised control over their conduct and benefited from not making pension contributions.

144.    **Enabling a Breach.** ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(2), imposes liability on a fiduciary if by failing to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of their specific responsibilities which gives rise to their status as a fiduciary, they have enabled another fiduciary to commit a breach.

145.    The Monitoring Defendants and Augsburg, by committing the breaches described previously, enabled breaches of the Pension Committee Defendants.

146.    As a direct and proximate result of the breaches of fiduciary and co-fiduciary duties alleged herein, the Plan became substantially underfunded and was terminated, and indirectly the Plaintiffs and the Plans' other participants and beneficiaries, lost millions of dollars worth of retirement benefits.

147.    Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) and (a)(3), the Co-Fiduciary Defendants are liable to restore the losses to the Plan, which are the result of their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

### Count VII:  State Law:  Breach of Trust

148.    Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs.

149.    This Count asserts this claim against Augsburg, alternately to Counts I – VI.

150.    Plaintiffs and the Class members were and are beneficiaries of a trust of the assets of the Plan. Augsburg established the Plan on June 1, 1939 and is the settlor of the trust.

151.    Augsburg has continued to hold and maintain legal title over the Plan assets prior to any distributions to participants and beneficiaries. Augsburg has the power to appoint and control insurance companies and other co-trustees to administer the Plan assets. *See* Plan Document #1, § 9.2 (Funding Agency). Augsburg is subject to legal duties described in the Plan document. Therefore, the trust has a designated trustee (Augsburg and any co-trustees) with enforceable duties.

152.    The trust has designated beneficiaries. The written Plan states, "Purpose. The Plan has been established so that eligible employees will have a source of retirement income in addition to the other sources of retirement income available to them." *See* Plan Document, § 1.2. The eligible employees of Augsburg are the beneficiaries of the trust.

153.    The trust has a definite trust res or corpus in which the trustee's title is separated from the beneficiaries' interest. The Plan Document states, "All sums of money and all securities and other property received by the Funding Agency for purposes of the Plan, together with all investments made therewith, the proceeds thereof, and all earnings and accumulations thereon, and the part from time to time remaining shall constitute the 'Fund.'" *See* Plan Document, § 9.1 (Composition). The Fund is held by a trustee for the benefit of the eligible employees, and therefore in trust.

154.    The terms of the trust include that the employee beneficiaries would have a defined benefit pension plan, that Augsburg would pay pension benefits upon Plaintiffs'

or the Class members' retirement after vesting and sufficient years of service, and that Augsburg would make payments to the trust sufficient to provide such benefits.

155.   Alternately, the Court should construe the terms of the trust as consistent with the trust terms described above, due to the other circumstances alleged in this Complaint.

156.   Augsburg has breached the terms of the trust by failing to fund the trust, and more recently, transferring assets from the Plan to the Second Plan, and then purporting to terminate both Plans.

157.   As a direct and proximate result of the breach of trust described herein, the trust, Plaintiffs, and the other Class members have been deprived of contributions and pension benefits to which they are entitled under the terms of the trust.

158.   Pursuant to equitable Minnesota state trust law, Defendants should be required to reimburse the trust for its losses.  Plaintiffs and the Class also seek further equitable relief as described in the prayer for relief of this Complaint.

### Count VIII:  State Law:  Breach of Fiduciary Duty of Prudence

159.   Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs.

160.   This Count asserts this claim against the Prudence Defendants, alternately to Counts I – VI.

161.   The Prudence Defendants are fiduciaries of the Plan and the trust previously alleged, pursuant to Minnesota state law, for the same factual reasons as previously alleged under ERISA.  By virtue of their positions and training, Augsburg

required Plaintiffs and the other Class members to rely on the Prudence Defendants and to place complete trust in the Prudence Defendants to look after their retirement plan.

162.   Minnesota state law imposes on trustees a similar, fiduciary duty of loyalty to ERISA's.  Minnesota trustees also have a duty of full disclosure.

163.   Minnesota state law imposes a duty to exercise reasonable care, skill, and caution in investing and managing trust assets.  A trustee may not exercise his or her discretion in a manner that defeats the original intent or purpose of the trust.

164.   The scope of the fiduciary duties and responsibilities of the Prudence Defendants included managing the Plan and its assets for the sole and exclusive benefit of the Plan's participants and beneficiaries, and with the care, skill, diligence, and prudence required by Minnesota state law.  The Prudence Defendants, other than Augsburg, were members of, and on information and belief, participated in, the meetings and activities of the Pension Committee in administering the Plan and its assets.  In the course of those meetings and activities during the Class Period, they discussed the state of the Plan to an extent not available to Plaintiffs or other members of the Class, and consequently had the opportunity to learn about the underfunded state of the Plan and react to it.

165.   Augsburg also exercised *de facto* authority and control with respect to the other Prudence Defendants, making itself fully responsible for the prudent and loyal fulfillment of the *de jure* responsibilities assigned to those Prudence Defendants, without relieving them of any responsibility.  In carrying out these responsibilities, the Prudence Defendants were required to evaluate the Plans' situation on an ongoing basis and take the necessary steps to ensure that the Plans' assets were preserved and funded and

invested prudently and consistent with the Plans' terms and the trust's intent as previously alleged.

166.    Contrary to their duties and obligations under the Plan's documents and state law, the Prudence Defendants failed to loyally and prudently manage the assets of the Plan.  Specifically, during the Class Period, the Prudence Defendants knew or should have known Augsburg was not funding the Plan sufficiently to pay vested benefits as intended by the trust.

167.    The Prudence Defendants breached their fiduciary duties to the Plan to prudently and loyally manage the Plan and its assets by failing to respond appropriately to the underpayment of the Plan contributions.  Then, they stood idly by while Augsburg failed to fund the Plan sufficiently to pay its obligations for vested pension benefits of employees and retirees, and, perhaps most egregious, stood idly by while those employees continued to work and supposedly earn pensions they would never be paid.

168.    As a consequence of the Prudence Defendants' breaches of fiduciary duty alleged in this Count, the Plan suffered substantial losses.  If the Prudence Defendants had discharged their fiduciary duties to prudently and loyally manage the Plan, the significant losses sustained by the Plan would have been reduced or minimized. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged, the Plan became underfunded by millions of dollars.

169.    Pursuant to state fiduciary duty law, the Prudence Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.  Plaintiffs further request other equitable relief as appropriate.

**Count IX:  State Law:  Breach of Duty of Disclosure to Participants**

170.   Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs.

171.   This Count alleges a state law fiduciary breach against the following Defendants: the Participant Disclosure Defendants.

172.   At all relevant times, the Participant Disclosure Defendants were fiduciaries within the meaning of Minnesota state law, for the factual reasons previously described.

173.   The scope of the Participant Disclosure Defendants' fiduciary duties included disseminating the Plan's information to participants and beneficiaries regarding the Plan and/or its assets.

174.   Minnesota state law imposes on trustees and similar fiduciaries a duty of full disclosure.  The duty of loyalty requires fiduciaries to speak truthfully to participants, not to mislead them, and to disclose information that participants need in order to exercise their rights and interests.  This duty to inform participants includes an obligation to provide participants and beneficiaries of a plan with complete and accurate information, and to refrain from providing false information and refrain from concealing information.

175.   The Participant Disclosure Defendants breached their duty to inform participants fully by failing to provide complete and accurate information regarding Augsburg's contributions to the Plan and by generally conveying through statements and omissions inaccurate information regarding Augsburg's underpayments and the underfunded nature of the Plan.

176.   Misleading and inaccurate information concerning the Plan and its funding was stated in the official documents disseminated to Plaintiffs and other Plan participants.

177.   The failure of the Participant Disclosure Defendants to provide complete and accurate information regarding the funding of the Plan affected all Plan participants in the same way in that the participants did not receive crucial, material, information regarding contribution, funding, and projected ability to pay the pensions for which the participants were working, or had worked prior to leaving or retiring from Augsburg.

178.   Pursuant to Minnesota state law, Defendants are liable to restore the losses to the trust and Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## Count X:  State Law:  Breach of Contract

179.   Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs.

180.   This Count asserts a state law claim for breach of contract against Augsburg and seeks disregard of Augsburg's corporateness as to ELCA, alternately to Counts I - VI.

181.   Augsburg is ELCA's alter ego.   In this setting and context, Augsburg repeatedly continued to promise pensions to the Plaintiffs and the other Class members, implying they could rely on ELCA and Augsburg to provide for them for their retirement.

182.   Augsburg's written statements promising a defined benefit pension plan were part of a valid and binding contract between Plaintiffs and members of the Class and Augsburg, to pay wages or salary and to pay pension benefits upon Plaintiffs' and

other Class members' retirement after vesting and sufficient years of service to Augsburg. Those terms were widely communicated to Plaintiffs and the other Class members through benefit statements, before and while the Plan's assets and ability to pay deteriorated.

183. Another term of the contract was Augsburg's duty to determine and pay sufficient contributions to its defined benefit pension Plan so that the Plan could pay benefits as promised to Plaintiffs and the other Class members. This term was implied in fact and law by the benefit statements Augsburg issued to Plaintiffs and the other Class members.

184. Plaintiffs and the Class members accepted the contract terms described above and provided consideration by working for Augsburg, and earning and accruing hours of service in the pension Plan.

185. Plaintiffs and the Class members satisfied the conditions to Augsburg's duty to pay to the Plan and, through the Plan, to pay benefits to Plaintiffs and the other Class members.

186. Augsburg breached the contract by failing to fund, and then terminating the Plan and halting payment of pension benefits to Plaintiffs and the other Class members.

187. **ELCA's Liability:**   ELCA is responsible for the contract along with Augsburg. Augsburg is a mere alter ego or instrumentality of ELCA and there is a fundamental unfairness in its use of Augsburg's corporate status because of ELCA's transactions with Augsburg as it became potentially insolvent and made false promises to its employees, the Plaintiffs and other Class members.

188.   Augsburg is merely an alter ego or façade for ELCA, for the following reasons.

   a.   Augsburg's original Articles of Incorporation reflects that its first Board of Trustees consisted of Rev. James Crumley, of the Lutheran Church in America, and Rev. Will L. Herzfeld and Rev. David W. Preus, of The American Lutheran Church.

   b.   The current Restated Articles of Incorporation state, "This corporation is organized and shall be operated exclusively for religious purposes and exclusively for the benefit of and to assist in carrying out the purposes of the Evangelical Lutheran Church in America (the 'ELCA'), a Minnesota nonprofit corporation.  In furtherance of these purposes this corporation shall be responsible for the publishing, production and distribution of publications to be sold to accomplish the mission of the ELCA and perform such other functions for the benefit of the ELCA as may be specified from time to time by the Church Council or the Churchwide Assembly of the ELCA." *See* Restated Articles of Incorporation of Publishing House of the Evangelical Lutheran Church In America, Art. II.

   c.   In the event of dissolution of Augsburg, any surplus property reverts to ELCA.  *See* Restated Articles Of Incorporation of Publishing House Of The Evangelical Lutheran Church In America, Art. X.

   d.   Delegates of the convention of ELCA elect the Augsburg Director Defendants.

e. ELCA's Presiding Bishop participates in the Augsburg Director Defendants' choice of Augsburg's Chief Executive Officer.

f. Augsburg's CEO attends meetings of ELCA's Church Council (the board of directors for ELCA).

g. ELCA appoints a bishop's advisor to the Augsburg Director Defendants.

h. Lewis, President and CEO of Augsburg, stated in a written report to ELCA's Churchwide Assembly, "We are the church, your partners in ministry." Lewis has frequently made other similar statements.

189.   Holding ELCA responsible for Augsburg's contract with its employees is necessary to prevent injustice or fundamental unfairness in this case.

190.   On information and belief, as of 1999, Augsburg was debt-free and had $18 million in reserves from real estate sales, and the Plan was fully funded. At that time, Augsburg generated $55 million per year in sales.

191.   Around that time, Augsburg owned a publication called, "The Lutheran," which produced $10 million to $12 million per year in revenue.

192.   On information and belief, between 2002 and 2005, The Lutheran became the intellectual property of ELCA. The consideration paid for The Lutheran, if any, is unknown to Plaintiffs.

193.   ELCA received a substantial benefit from this valuable capital asset, while Augsburg's finances declined substantially.

194.   On information and belief, after transfer of The Lutheran, Augsburg produced only $40 million per year in sales.   Augsburg's sales have subsequently declined to approximately $30 million.

195.   As of December 31, 2004, Augsburg's statement of financial position lists $26,179,789 in assets, but only $84,988 in unrestricted net assets, the remainder after total liabilities are subtracted from total assets.   At that time, Augsburg's pension benefits had a negative funding status of $14,575,568, at least some of which is reflected in the statement of financial position.   Nevertheless, $84,988 in unrestricted net assets left Augsburg undercapitalized and potentially insolvent soon after that time.

196.   Augsburg's Questions and Answers document of December 31, 2009, states as of that date the Plan's benefit obligations totaled approximately $24.2 million and its assets totaled $8.6 million.   Based on the foregoing figures, the resulting $15.6 million shortfall renders Augsburg potentially insolvent as of that date.

197.   ELCA benefits from Augsburg's failure to fund its pension, because ELCA receives any surplus assets remaining after Augsburg is dissolved.

198.   If Augsburg is part of ELCA so its plans are "church plans," then ELCA should be estopped to claim its dealings with Augsburg are merely workaday, arms-length business transactions.

199.   Holding ELCA responsible for Augsburg's contract with its employees is necessary to prevent injustice or fundamental unfairness in this case.

200.   As previously alleged, Augsburg promised pensions to the Plaintiffs and other Class members, and continued to do so as the Plans deteriorated, while failing to fund them.

201.   Plaintiffs and the other Class members relied on the promises of Augsburg's management, closely affiliated with ELCA, and worked for Augsburg, often for years, based in part on the promise of a pension when they retired.  Plaintiffs can never undo those years spent working for Augsburg, and can never work for a solvent employer for those years in order to earn a pension and save for their retirement.  Some Class members have retired in reliance on the promise of a pension, and will now be left without one, to their shock and detriment.

202.   Further, Augsburg intentionally attempted to designate the Plan as a church plan, leaving it uninsured by the Pension Benefit Guaranty Corporation, in order to avoid application of ERISA.   Defendants knowingly risked this very situation with the retirement plan of Plaintiffs and the other Class members, for their own purposes.

203.   Plaintiffs and the Class members have and will sustain substantial damages as a direct result of Augsburg's breach of contract.

## Count XI:  State Law:  Promissory Estoppel

204.   Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs.

205.   This Count asserts a state law claim for promissory estoppel against Augsburg and seeks disregard of corporateness as to ELCA, alternately to Counts I - VI.

206.   Augsburg made promises to Plaintiffs and Members of the Class that Augsburg would pay defined benefit pension benefits upon Plaintiffs' or the other Class members' retirement after vesting and sufficient years of service for Augsburg.  Those terms were communicated to Plaintiffs and the other Class members through summary plan descriptions, annual benefit statements and other generally distributed documents.

207.   Another term implied by the contract was Augsburg's duty to determine and pay sufficient contributions to its defined benefit pension plan so that the Plan could pay benefits as promised to Plaintiffs and the other Class members.  This term was implied in fact and law by the benefit statements Augsburg issued to Plaintiffs and the other Class members.

208.   Augsburg reasonably should have known that Plaintiffs and the other Class members would remain at work to complete their years of service and earn their pensions.  A principal purpose of pensions is to encourage employees to continue working at their job instead of leaving and causing turnover.

209.   Plaintiffs and the other Class members continued working at their jobs and earned their years of service for their pension benefits in reliance on the promises made to them by Augsburg Fortress Publishing.

210.   Augsburg has repudiated its promises and has terminated the Plan it promised its employees.  The promise must be enforced to avoid injustice to Plaintiffs and the other members of the Class.

211.   As alleged previously in Count X, ELCA must be held to these promises along with its alter ego, Augsburg, because of Augsburg's potential insolvency and to avoid injustice and fundamental unfairness.

212.   Plaintiffs and the Class members have and will sustain damages as a result of Augsburg's termination of The Plan and termination of The Second Plan and intent to stop paying benefits.

## Count XII:  State Law:  Consumer Fraud

213.   Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs.

214.   This Count alleges a violation of Minnesota Statutes § 325F.69 against Augsburg and seeks disregard of corporateness as to ELCA.

215.   The Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 2, makes it unlawful for any person to conduct "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby…"

216.   That act defines "merchandise" to include "any objects, wares, goods, commodities, intangibles, real estate, loans, or services." Minn. Stat. § 325F.68, subd. 2. The statute applies to investment contracts. The interests of Plaintiffs and the Class members in the Plan constitute an investment contract, and therefore "merchandise" within the meaning of Minn. Stat. § 325F.68, subd. 2.

217.   Augsburg repeatedly distributed written statements to its employees, promising the employees would receive a defined benefit pension plan. Those promises were widely communicated to Plaintiffs and the other Class members through benefit statements, as described in this Complaint.

218.   For example, as recently as November, 2008, a summary plan description for The Plan stated, "The benefit under this Plan is earned gradually over your career with AFP." *See* Ex. D, at AF0012.

219.   The summary plan description further stated, "If your employment with AFP terminates when you reach age 65, you are entitled to a monthly pension benefit beginning as of the first day of the next month." *See* Ex. D, at AF00114.   It further stated, "You will be entitled to a 'vested pension' if you terminate after completing at least 5 years of vesting service." *Id,* at AF00114.

220.   In fact, Augsburg's defined benefit plan, the Plan, was underfunded for years before Augsburg finally terminated it.   On information and belief, since approximately 2001, Augsburg had been underfunding the Plan. This information and belief is based on Augsburg's document entitled, Questions and Answers Regarding Termination of the Augsburg Fortress Retirement Plan (December 31, 2009), stating that the Plan has been underfunded for approximately nine years.

221.   Augsburg's wrongful conduct in making widespread misleading statements to its employees promising and implying they would receive a defined benefit pension benefit, when Augsburg knew that the Plan was substantially underfunded, constituted a use of false pretenses, false promises, misrepresentations or misleading statements or

deceptive practices, all with the intent that others rely on those statements, within the meaning of the Minnesota consumer protection statutes.

222.   As a result of Augsburg's fraud, false pretenses, false promises, misrepresentations, misleading statements and deceptive practices, Plaintiffs and the Class have suffered actual damages in that they worked for Augsburg under the illusion that they would receive a defined benefit pension and be able to retire after their years of service.

223.   ELCA should be held responsible for Augsburg's violations for the reasons alleged in Count X.

224.   Both Augsburg and ELCA should be permanently enjoined against using false promises, misleading statements and deceptive practices against their employees, retirees, and other retirement plan participants.

225.   Plaintiffs and the Class members have and will sustain damages as a result of Augsburg's violations.

226.   Plaintiffs have alleged violations of Minn. Stat. § 325F.69, subd. 2. Plaintiffs have been injured as a result of Defendants' violations of that statute. Plaintiffs' lawsuit is a public benefit because Defendants' misleading information was regularly distributed to many Class members, some of whom will likely become dependent on government benefits as a result of these violations. Plaintiffs are therefore entitled to injunctive relief, damages, and other relief pursuant to Minn. Stat. § 8.31.

## XI.  <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiffs and the Class request the following relief:

1.      That this Court certify this action as a class action pursuant to Fed. R. Civ. P. 23 (a), (b)(1), (b)(2) and (b)(3).

2.      That this Court order trial to a jury on any legal claims, and trial to the Court with an advisory jury for all equitable claims.

3.      That this Court declare that the Plan is not a church plan.

4.      That this Court reform the Plan Document to reflect that it is a defined benefit plan regulated by ERISA.

5.      That this Court direct the sponsor of the Plan, Augsburg, to bring the Plan into compliance with ERISA.

6.      That this Court order that Defendants make good to the Plan its losses as a result of their breaches of fiduciary duty.

7.      That this Court order declaratory and injunctive relief as necessary and appropriate, including restoring all losses to the Plan caused by the Defendants' violations of state and federal fiduciary duties.

8.      That this Court order that each of the Defendants is liable for equitable relief in the form of money paid to the Plan and its participants and beneficiaries for violating their duties as fiduciaries and co-fiduciaries, breach of trust, breach of contracts, promissory estoppel violations and statutory consumer fraud violations.

9.      That this Court declare that ELCA is responsible for the liabilities created by its alter ego, Augsburg, as described in this complaint.

10.    That this Court enjoin the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA, the Plan's documents, and state law, with respect to the Plans.

11.    That this Court award to Plaintiffs reasonable costs and attorneys' fees as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), Minn. Stat. §8.31 and other applicable law.

12.    That this Court grant such other relief as may be just and proper, including taxable costs and interest, as provided by law.

Date: April 21, 2010                    **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

By: _Craig S. Davis_____

Richard A. Lockridge, ##64117
Karen Hanson Riebel, #219770
Craig S. Davis, #148192
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
Telephone:   612-339-6900
Facsimile: 612-339-0981

Lynn Lincoln Sarko
KELLER ROHRBACK, L.L.P.
1201 Third Avenue
Suite 3200
Seattle, WA  98101
Telephone:   206-623-1900
Facsimile:   206-623-3384

Ron Kilgard
KELLER ROHRBACK, P.L.C.
Suite 1400, CBIZ Plaza
3101 North Central Avenue
Phoenix, AZ  85102
Telephone:  602-248-0088
Facsimile:  602-248-2822

Gregory N. McEwen, #0273843
MCEWEN LAW FIRM, LTD.
5850 Blackshire Path
Inver Grove Heights, MN  55076
Telephone:  651-224-3833

**ATTORNEYS FOR PLAINTIFFS**