# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Judith Thorkelson, Karen Walhof,
Gayle Aldrich, and Jean K. Stanley,
individually and on behalf of others
similarly situated,

      Plaintiffs,

v.

 

Publishing House of the Evangelical
Lutheran Church in America, d/b/a
Augsburg Fortress Publishers, Beth Lewis.
John Rahja, Sandra Middendorf,
Evangelical Lutheran Church In
America ("ELCA") and John or Jane Doe
# 1-28,

      Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 10-1712

_____

     Richard A. Lockridge, Karen Hanson Riebel and Craig S. Davis, Lockridge Grindal Nauen P.L.L.P. and Lynn Lincoln Sarko, Keller Rohrback, L.L.P., Counsel for Plaintiffs.

     Charles F. Knapp, Paul W. Heiring and Julie Giddings, Faegre & Benson LLP, Counsel for Defendants Publishing House of the Evangelical Lutheran Church in America, d/b/a Augsburg Fortress Publishers ("AFP"), Beth Lewis , John Rahja and Sandra Middendorf.

     Ruth S. Marcott, Brian T. Benkstein and Jessica J. Nelson, Felhaber, Larson, Fenlon & Vogt, P.A., Counsel for Defendant Evangelical Lutheran Church In

America ("ELCA").

_____

I.      **Introduction**

In this action, Plaintiffs seek to represent a class of persons that were

participants or beneficiaries of a defined benefit pension plan from January 1,

2000 to the present.  The plan referred to is the "Retirement Plan for Employees of

Augsburg Fortress Publishers, Publishing House of the ELCA" (hereinafter "the

Plan").   The Plan was established in 1939 for the benefit of Plaintiffs and other

AFP employees and retirees.  (Comp. ¶ 59.)  The Plan was terminated in 2010,

however, and at that time, there were approximately 500 participants, of which

175 had already retired.  (Id.)

In the Complaint, Plaintiffs have asserted a number of claims against

Defendants pursuant to ERISA and state law claims of breach of trust, breach of

fiduciary duty of prudence, breach of duty of disclosure, breach of contract,

promissory estoppel, and consumer fraud.  Attached to the Complaint are the

following: Ex. A (The Plan); Ex. B (Employee Summary of the Plan 11/08)); Ex. C

(the Plan - effective October 1, 2009); Ex. D (Employee Summary 09/09); Ex. E

(Questions and Answers Regarding Termination of Augsburg Fortress

Retirement Plan).

Currently before the Court are motions to dismiss by AFP and ELCA.

## II.     Summary of Opinion

The Court hereby finds that the Plan is a church plan exempt from the provisions of ERISA.  Accordingly, all claims asserted thereunder must be dismissed.  The Court further finds that Plaintiffs have failed to state a claim under the Minnesota Consumer Fraud Act, warranting dismissal of Count XII. The Court finds that Plaintiffs have, however, alleged sufficient facts to withstand dismissal as to the remaining state law claims, Count X and XI, asserted against ELCA.

## III.    Factual Allegations

ELCA is a Minnesota non-profit corporation with its principal office in Chicago, Illinois.  ELCA has approximately 10,500 congregations and about 4,500,000 members.  AFP publishes, produces, distributes and sells books and other materials of an historical, philosophical, religious, spiritual or self-help nature. (Id. ¶ 15.)  It sells to Lutheran church congregations and to individuals and institutions worldwide.  (Id.)  In 2004, its revenues were $43,251,138 with $26,179,789 in total assets.  (Id.)

Plaintiffs allege that AFP and ELCA are tightly connected in a number of ways. For example, AFP's surplus property would become ELCA property if AFP were dissolved. (Id. ¶ 188(c).) Delegates of ELCA's convention elect the voting members of AFP's Board of Directors. (Id.) ELCA's presiding bishop and AFP's Board of Directors jointly hire and fire AFP's CEO. (Id.)

Plaintiffs further allege that when AFP advised the Plan's participants that the Plan was underfunded and would be terminated, AFP stated that it could not currently afford to make sufficient contributions to sustain the Plan. (Id. ¶ 71, Ex. E at 2-3.) This was the first time that AFP had disclosed that the Plan had been underfunded for the previous nine years and that the underfunding exceeded $10 million for each of the past six years. (Id. Ex. E at 4.)

Plaintiffs allege that these disclosures, along with other recent discoveries, show that AFP's pension fund and corporate finances had declined considerably since 1999 - before which AFP was debt-free and had $18 million in reserves. (Id. ¶ 190.) On information and belief, Plaintiffs allege that the Plan remained fully funded until 2001, and that by the end of 2004, AFP had only $84,988 in unrestricted assets. (Id. ¶ 195.)

Plaintiffs allege that during this period of financial difficulty, 2002-2005,

AFP transferred the rights to intellectual property or revenue from the magazine, The Lutheran, to ELCA.  (<u>Id.</u> ¶ 192.)  Before the transfer, this magazine produced $10 million to $12 million in revenue per year for AFP.  (<u>Id.</u> ¶ 191.)  After the transfer, AFP produced only $40 million in sales, compared to previous annual sales of $55 million.  (<u>Id.</u> ¶¶ 190, 194.)

Even though AFP was experiencing financial difficulties, it continued to promote its defined benefits plan.  (<u>Id.</u> ¶¶ 62, 78.)  AFP repeatedly distributed written statements to employees promising benefits.  (<u>Id.</u> ¶ 217.)  As recently as November 2008, a summary plan description stated the Plan's benefit "is earned gradually over your career with AFP."  (<u>Id.</u> ¶ 218.)  Contrary to these assertions, AFP deliberately underfunded the Plan for nine years, and severely underfunded it for six years.  (<u>Id.</u>, Ex. E.)

Plaintiffs allege the results have been catastrophic.  Of the 500 participants, 175 have already retired, and of those, some are too old or sick to reenter the work force.  All of them have lost most, and many all, of their expected AFP retirement income.

## IV.     Motions to Dismiss

Before the Court are the motions of AFP, Beth Lewis, John Rahja and

Sandra Middendorf's (collectively "AFP") and ELCA to dismiss certain counts. Both AFP and ELCA argue that the Plan is a "church plan" as defined by ERISA, therefore the Plan is excluded from ERISA coverage and governed only by state law. Plaintiffs concede that the federal and state law claims asserted are mutually exclusive; if the Court finds that the Plan is not a church plan, then the actions arise under ERISA and the state law claims will be entirely preempted.

By its motion, AFP moves to dismiss the ERISA claims, Counts I-VI, and Count XII, which asserts a state law claim under the Minnesota Consumer Fraud Act. ELCA moves to dismiss all claims asserted against it, Counts I, V, VI, X, XI, and XII.

### A.    Standard for Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Thus, although a complaint need not include

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In moving to dismiss these allegations, ELCA argues that the Court can consider "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." Bd. of Public Works, City of Blue Earth, Minn. v. Wis. Power & Light Co., 613 F. Supp.2d 1122, 1126 (D. Minn. 2008). ELCA argues that the Complaint specifically references the following: AFP Articles of Incorporation, the AFP Bylaws and The Lutheran magazine. The tax exemption letters are properly before the Court as a matter of public record. Also, the Court can consider the ELCA Constitution, Bylaws and Continuing Resolutions ("ELCA-CBR") because they are embraced by the Complaint and are integral to the Plaintiffs' claims.

Plaintiffs argue that the motions to dismiss currently before it are improper because such motions are based on documents that should not be considered with respect to a motion to dismiss. For example, AFP relies on the ELCA Constitution, but such document has been amended five times since 2000, AFP

has submitted only excerpts of such document, and the document has not been

tested in discovery.  Further, the Complaint does not rely on AFP's bylaws, yet

ELCA relies on such document in its motion to dismiss.  Accordingly, Plaintiffs

request the Court not consider any document that is not attached to the

Complaint or expressly embraced by the allegations in the Complaint.

For purposes of this motions to dismiss, the Court will consider only those

documents attached to the Complaint.

### B.    Analysis

### 1.    Whether the Plan is a "Church Plan" as Defined by ERISA

The Plan is a traditional defined-benefit pension plan which paid monthly

benefits based on an employee's compensation, years of service and age at

retirement.  The Plan expressly provides that it is "intended to be a church plan

within the meaning of section 414(e) of the [Internal Revenue] Code and section

3(33) of the Employee Retirement Income Security Act . . . The Plan shall be

administered and construed with said intent."  (Compl. Exs. A and C at Sec. 1.4).

The summary of the Plan submitted to its participants contains a similar

disclosure, "The Plan is a 'church plan' as defined in section 414(e) of the federal

tax laws . . .[C]hurch plans are not subject to the provisions of federal law that are

generally referred to as 'ERISA'" (Id. Ex. B at ii and Ex. D at 1.)  The Plan further

provides that it will provide benefits only to the extent that the Plan has sufficient

assets to pay those benefits.  (See, e.g., Id. Exs. A and C at Sec. 8.6; Exs. B and D at

p 22 and 23 respectively.)

Whether or not the Plan is a "church plan" as defined by ERISA is

dispositive with respect to the claims asserted thereunder, as ERISA's provisions

do not apply to such plans.  29 U.S.C. § 1003(b)(2).  See also, Chronister v. Baptist

Health, 442 F.3d 648, 651 (8th Cir. 2009) (finding that "Church plans are not

ERISA plans.").  ERISA defines "church plans" in relevant part as follows:

(33)(A) The term "church plan" means a plan established and maintained
(to the extent required in clause (ii) of subparagraph (B)) for its employees
(or their beneficiaries) by a church or by a convention or association of
churches which is exempt from tax under section 501 of Title 26.

(B) The term "church plan" does not include a plan--

(i) which is established and maintained primarily for the benefit of
employees (or their beneficiaries) of such church or convention or
association of churches who are employed in connection with one or
more unrelated trades or businesses (within the meaning of section
513 of Title 26), or

(ii) if less than substantially all of the individuals included in the
plan are individuals described in subparagraph (A) or in clause (ii)
of subparagraph (C) (or their beneficiaries).

(C) For purposes of this paragraph--

(i) A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

(ii) The term employee of a church or a convention or association of churches includes--

(i) a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry, regardless of the source of his compensation;

(II) an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of Title 26 and which is controlled by or associated with a church or a convention or association of churches; and

(III) an individual described in clause (v).

(iii) A church or a convention or association of churches which is exempt from tax under section 501 of Title 26 shall be deemed the employer of any individual included as an employee under clause (ii).

(iv) An organization, whether a civil law corporation or otherwise, is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches.

* * * * *

29 U.S.C. § 1002 (33).

Relying on thirty years of agency determinations and court decisions, the

Defendants assert that while subsection (A) is limited to plans sponsored directly

by a church, subsection (C)(i) broadens the definition of church plan by

encompassing those plans of a tax-exempt organization that is controlled by or

associated with a church.  In addition, subsection (C)(ii)(II) provides that

"employees of a church" include employees of an organization which is exempt

from tax under section 501 and which is controlled by or associated with a

church, while subsection (C)(iii) provides that a church shall be deemed the

employer of any individual included as an employee under clause (ii).

There is no dispute that AFP is a tax exempt corporation.  (<u>See</u> Affidavit of

John Rahja, Ex. A (IRS 501(c)(3) Group Tax Exemption Letter).)  There is also no

dispute that AFP is an organization that is both controlled by and associated with

ELCA.  Plaintiffs concede that AFP is controlled by or associated with ELCA.

(Plaintiffs Opp. Brief p. 38.)  Defendants thus argue that the Plan qualifies as a

church plan as defined by ERISA.

Plaintiffs initially argue that Defendants' motions to dismiss the ERISA

claims are premature, as discovery is ongoing. However, as will be discussed

herein, whether the Plan is a church plan involves statutory interpretation only.

Plaintiffs do not challenge any facts upon which such interpretation is based.

Accordingly, the motions to dismiss the ERISA claims are properly before the

Court at this time.

Plaintiffs argue that the Plan is not a church plan as it is a single-employer,

defined-benefit plan that is sponsored by a non-church organization. To qualify

as a church plan, Plaintiffs argue the Plan must be established and maintained by

a church or established and maintained by a separate church pension board. In

support of their argument, Plaintiffs first address the statutory definition of

church plan as originally adopted in 1974 and modified in 1980. Plaintiffs assert

that as originally adopted, a church plan was defined to include only a plan

established by a church or convention/association of churches for its own

employees or a plan established by a church or a convention/association of

churches for its own employees and the employees of a church-related agency,

but only until 1982.

The definition of church plan was thereafter amended in 1980. Plaintiffs

assert that the Court should take into consideration the legislative history behind

the amendment to the definition of church plan when interpreting such term.   In summary, Plaintiffs argue the legislative history indicates that the definition of church plan was amended to allow churches to include the employees of their church-related agencies in their own plans and to clarify that pension boards could manage church plans.

With this in mind, Plaintiffs argue that the amendments added a new definition of "employee" to allow churches to include employees of church-related entities.  See 29 U.S.C. § 1002 (33)(C)(ii)(II).  Such amendment was not intended to include a single-employer plan of a church-related agency such as AFP, however.

Plaintiffs argue the other major change to the definition of church plan was meant only to clarify the role of pension boards.  See 29 U.S.C. § 1002(C)(i). Plaintiffs argue that this subsection provides that a church plan could be maintained by an organization, the principal purpose of which is the administration or funding of a plan or program for the provision of benefits; in other words a pension board such as ELCA's Board of Pensions.  Here, the Plan is not maintained by ELCA's Board of Pensions, rather it is maintained by AFP itself.  In addition, AFP's principal purpose is not to administer or fund the Plan.

13

Plaintiffs thus argue that the Plan is not a church plan. If a single-employer plan of a church-related agency is deemed a church plan under ERISA, Plaintiffs argue that any stand alone plan of a church-related school, hospital or publisher is a church plan and the whole structure of ERISA, with its elaborate cross references and definitions, is nonsensical. Congress could have easily modified the statute in 1980 to define a church plan as a plan established by a church or tax exempt entity associated with a church.

Plaintiffs acknowledge that there are case law and agency decisions from the Department of Labor and the IRS supporting an interpretation of church plan which would include AFP's Plan. Plaintiffs argue that this Court need not give the agency decisions deference, but also argue that the agency decisions are wrong because they interpret subsection (C)(i) as providing that a church related organization can maintain the plan, where under Plaintiffs' interpretation, this subsection provides only that the church can allow its pension board to maintain the plan of a church related organization. See, e.g., 1983 General Counsel Memorandum, GCM 39007, 1983 WL 197946 (July 1, 1983); DOL Adv. Op. No. 90-12A (May 10, 1990).

With respect to the applicable case law, Plaintiffs assert there is no

controlling case law from the Eighth Circuit.  With regard to the few cases that have addressed the issues presented here, Plaintiffs argue such cases reach the wrong conclusion by relying on incorrect IRS and DOL agency determinations. Further, the cases do not address the Plaintiffs' arguments presented here.

The Court has thoroughly reviewed the applicable law and the arguments of counsel, and finds no support for Plaintiffs' position that a single employer benefit plan, established and maintained by an organization controlled by or associated with a church, is not a church plan as defined by ERISA.  Rather, the Court finds that the statutory language defining "church plan," as well as the applicable agency determinations and court decisions support a finding that the Plan is a church plan.

The Court begins its analysis by reviewing the relevant statutory language. In addition to plans established and maintained by churches or convention/association of churches, a church plan also includes one that is "maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of [] benefits . . . for the employees of a church or convention or association of churches, if such organization is controlled by or

associated with a church . . . " 29 U.S.C. § 1002 (33)(C)(i).   Employees of a church

include employees "of an organization, whether a civil law corporation or

otherwise, which is exempt from tax under section 501 of Title 26 and which is

controlled by or associated with a church or a convention of churches."  29 U.S.C.

§ 1002 (33)(C)(ii)(II).  Further, the church is deemed the employer of those

individuals included as an employee under clause (ii).  29 U.S.C. § 1002

(33)(C)(iii).  Specifically excluded from ERISA's definition of church plan is any

plan that is "established and maintained primarily for the benefit of employees

(or their beneficiaries) of such church or convention or association of churches

who are employed in connection with one or more unrelated trades or

businesses."  29 U.S.C. § 1002 (33)(B)(i).

     Applying this statutory language to AFP's Plan, it is clear that the Plan is a

church plan.  First, the Plan is sponsored by AFP and administered by AFP's

Pension Committee.  (Comp. Exs. A and C at § 1.3.)   AFP is a tax-exempt

corporation and it is controlled by and associated with ELCA.  Plaintiffs do not

dispute that the Pension Committee's sole purpose is to administer the Plan.

Based on this interpretation of the relevant statutory language, the Plan at issue

here is a church plan that is exempt from ERISA.

The applicable case law and agency decisions of the IRS and the DOL support this straightforward interpretation of the relevant ERISA language - that the analysis should focus on whether the Plan is sponsored by a tax-exempt entity, and whether such entity is controlled by or associated with a church. For example, the Fourth Circuit was asked to determine whether a disability plan offered by Baptist Healthcare System was a church plan as defined by ERISA. Lown v. Continental Cas. Co., 238 F.3d 543, 547 (4th Cir. 2001). The court noted that based on the ERISA definition, not all benefits plans maintained by a church are exempt from ERISA. The court noted that ERISA specifically excludes plans established and maintained primarily for the benefit of those employed in connection with an trade or business unrelated to the church. Id. "Despite this exception to the definition of church plan, a plan established by a corporation associated with a church can still qualify as a church plan." Id.

The Eighth Circuit, relying on Lown, also focused its analysis of whether the plan at issue was a church plan by determining whether the plan sponsor, Baptist Health, a nonprofit corporation that owned and operated hospitals, was controlled by or associated with the Baptist Church. Chronister, 442 F.3d at 653. The court voiced no concern as to whether the plan was established or

maintained by a church, or whether the plan was administered by a church

pension board.  See also, Catholic Charities of Maine v. City of Portland, 304 F.

Supp. 2d 77, 85 (D. Me. 2004) (finding that a plan established and maintained by

a non church organization, Catholic Charities, was a church plan under ERISA

because it was controlled by and associated with the Catholic Church and that

the church was deemed the employer of Catholic Charities employees); Goetz v.

Greater Georgia Life Ins. Co., 554 F. Supp. 2d 831 (E.D. Tenn. 2008) (plan at issue

not a church plan as evidence did not support a finding that plan was offered by

an organization that was controlled by or associated with a church).

In Rinehart v. Life Ins. Co. of N. Am, No. C08-5486, 2009 WL 995715 (W.D.

Wash. April 14, 2009)[1] the court was asked to decide whether a long term

disability plan sponsored by Providence Health & Services ("PH&S") was a

church plan as defined by ERISA.  In reviewing the relevant statutory language,

the court determined that under ERISA, a plan established by a corporation,

---

[1]Plaintiffs argue the court's analysis Rinehart is flawed as it misquotes the statute by stating a church plan is one "established or maintained" by a church or convention of churches. No. C08-5486, 2009 WL 995715, at *2 (W.D. Wash. April 14, 2009)  The statute provides, however, that a church plan is one "established **and** maintained" by a church or convention of churches.  Section 1002(33)(A) (emphasis added).  The Court finds no merit in Plaintiffs' criticism of the Rinehart decision, as it is clear that the decision was not based on a misquotation of the statute.

controlled or associated with a church, may qualify as a church plan in two ways 1) under subsection (C)(i); or 2) under subsection (C)(ii)(II). 2009 WL 995715, at *2. The court then held that subsection (C)(i) has overwhelmingly been interpreted as not limiting the non-church organizations that can establish a church plan. Id., at *3 (citing Torres v. Bella Hospital, Inc., 523 F. Supp. 2d 123, 142 (D. P.R. 2007)). The court further noted that such an interpretation is consistent with the language in subsection (C)(ii)(II), which broadens the scope of church plans by deeming employees of an organization that is controlled by or associated with a church as church employees. Id., at *4. "It is important to note the absence of the 'principal purpose' language in [§ 1002 (33)(C)(ii)(II)]. By leaving out that language, 'ERISA brings a plan established or maintained by a non-church organization within the general definition of a 'church plan' if that organization is 'controlled by' or 'associated with' a church.'" Id. (quoting Catholic Charities, 304 F. Supp. 2d at 85). Ultimately, the court found that PH&S's long term disability plan was a church plan because it was sponsored and administered by an organization, PH&S, that is controlled by and associated with the Catholic Church.

Similarly, in Welsh, the court rejected the argument, put forth by the plan

sponsor, Ascension, that its plan was not a church plan because it did not fall within one of three types of entities recognized under § 1002(33) that may sponsor a church plan - a church, a convention or association of churches that is tax exempt or an organization controlled by or associated with a church whose principal purpose is the administration of the plan. 2009 WL 1444431, at *4.

> A fair reading of the plain language of § 1002(33)(C)(i) does not support the conclusion that there are three separate types of church plan sponsors, one of which may be an organization whose principal purpose is to administer or fund the plan. Rather, the statute identifies only two types of church plan sponsors, i.e., churches and conventions or associations of churches. In referencing an organization whose principal purpose is to administer or fund the plan, the statute merely describes an additional means by which a plan can be considered a church plan within the context of those two categories; it does not create a third category. The court must give effect to the plain meaning of 29 U.S.C. § 1002(33)(C)(i), which is clear and unambiguous.

2009 WL 1444431, at *6 (citing <u>Rinehart</u>, 2009 WL 995715 at *3). The court further found that to accept Ascension's argument, the court would have to ignore other provisions of ERISA, such as § 1002(33)(C)(ii)(II) "which broadens the scope of the term by including as church plans those plans which have been established or maintained by non-church organizations, provided the organization is controlled by or associated with a church." <u>Id.</u> at *7. The court held that sections 1002(33)(A), (C)(iv) and (C)(ii)(II) together "precisely define Ascension and its

LTD plan: the plan was established and is maintained for Ascension's workers, and Ascension is a tax exempt organization that admittedly is controlled by or associated with the Catholic Church since it shares common religious bonds and convictions with the church." Id. See also, Friend v. Ancillia Systems, Inc., 68 F. Supp.2d 969, 972-73 (N.D. Ill. 1999) (rejecting argument that a church plan must be administered by a separate legal entity that is controlled by or associated with a church and whose principal purpose is to administer the plan).

In a more recent case, a district court in the Western District of Wisconsin held that a benefits plan established by Ministry Health Care, Inc. ("MHC") was a church plan because MHC is a tax exempt corporation under § 501(c)(3) and because MHC is an organization controlled by and associated with a church. Ward v. Unum Life Ins. Co. of Am. No. 09-C-431, 2010 WL 4337821, *2 (W.D. Wis. Oct. 25, 2010).

The Court further finds that Plaintiffs' reliance on the legislative history of the 1980 amendments to ERISA is misplaced, as the statute's plain language does not support Plaintiffs' interpretation. See, e.g., Davis v. Michigan Dept. of the Treasury, 489 U.S. 803, 808, n.3 (1989) (legislative history is irrelevant to the interpretation of an unambiguous statute). Contrary to Plaintiffs' argument,

there is no language in § 1002 (33) which requires or even suggests that the Plan

be a multi-employer plan, or which prohibits a church pension board from

administering a single-employer plan.  Plaintiffs concede this by arguing that the

ELCA Pension Board could maintain AFP's plan.  Here, however, the Plan is

administered by a Pension Committee, and there is no basis to differentiate a

Pension Committee from a Pension Board.

The Court thus finds that the Plan is a church plan as defined by ERISA.

Accordingly, all claims asserted in the Complaint arising under ERISA will be

dismissed with prejudice.

### 2. State Law Claims

Plaintiffs have also asserted a number of state law claims.  Plaintiffs allege

that AFP is an alter ego of ELCA, rendering ELCA liable under Count X (breach

of contract), XI (promissory estoppel) and XII (Minnesota Consumer Fraud Act).

By its motion, ELCA moves to dismiss those state law claims asserted against it

pursuant to Rule 12(b)(6).

### a. Whether AFP is the Alter Ego of ELCA

ELCA argues that Plaintiffs have alleged few facts in support of their

position that AFP is the alter ego of ELCA.  "Under Minnesota law, piercing the

corporate veil requires (1) analyzing the reality of how the corporation functioned and the defendant's relationship to that operation, and (2) finding injustice or fundamental unfairness." Minnesota Power v. Armco, Inc., 937 F.2d 1363, 1367 (8th Cir. 1991). Minnesota courts use a two prong test to determine whether one corporation can be held liable for another entity's alleged wrongdoing. Victoria Elevator Co. of Minneapolis v. Meriden Grain Co., Inc., 283 N.W.2d 509 (Minn. 1979). Under this test, the court must first consider the following factors:

> Factors considered significant in the determination include: insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.

Id. (citing DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 684-85 (4th Cir. 1976)). Next, the court must consider whether there is a showing of injustice or fundamental unfairness. Id.

In support of the alter ego theory, Plaintiffs allege that the first AFP Board consisted of three Lutheran pastors; the AFP Articles of Incorporation provides that AFP is organized and operates exclusively for religious purposes and to

assist ELCA in carrying out its purposes; delegates of the ELCA convention elects the AFP Board; the AFP Articles of Incorporation provides that in the event of AFP's dissolution, any surplus property goes to ELCA; ELCA's presiding bishop participates in nominating AFP's CEO; ELCA appoints a bishop's advisor to the AFP-Board and AFP President and CEO has made statements to the effect that "we are the church, your partners in ministry."  (Comp. ¶ 188.)

Plaintiffs also advance allegations concerning a monthly magazine called The Lutheran.  Specifically, Plaintiffs allege that sometime between 2002 and 2005, this publication became the intellectual property of ELCA, which in turn became the decline of AFP. (Comp. ¶¶ 192-95.)

ELCA argues that Plaintiffs allegations fall significantly short of establishing a basis to disregard the separate corporate identifies of ELCA and AFP.  Plaintiffs do not allege insufficient capitalization or failure to observe corporate formalities.  The next factor, nonpayment of dividends, has no application to AFP, as it is a nonprofit corporation.  There are no allegations of nonfunctioning officers or directors, absence of corporate records or that AFP was a mere facade.  Plaintiffs do not allege that ELCA siphoned off AFP funds or had any involvement in AFP's finances.

In addition, Plaintiffs do not allege that the first AFP Board, made up of three Lutheran pastors, engaged in any misconduct, such as failing to observe corporate formalities.  (Comp. ¶ 188(g).)  Further, alleging a potential reversion of AFP's assets is simply speculation and such allegations should be rejected. Cafesjian v. Armenian Assembly of America, Inc., Civ. No. 07-2079, 2008 WL 906194, at *4 (D. Minn. March 31, 2008).  There is a complete absence of any allegations of commingling or financial improprieties.

With respect to the allegations concerning The Lutheran magazine, ELCA asserts the allegations are based on "information and belief."  Plaintiffs do not allege any specific facts to support the allegation that Defendants wrongfully transferred the intellectual property rights from AFP to ELCA.

The alter ego doctrine is designed to impose liability on the true defendant, rather than a corporate form.  SICK, Inc. v. Motion Control Corp., No. 01-1496, 2003 WL 21448864, at *9 (D. Minn. June 19, 2003).  In doing so, the Court is to analyze the "reality" of the corporate functions and to find injustice or fundamental unfair.  Minnesota Power, 937 F.2d at 1367.  With this in mind, the Court finds that Plaintiffs have asserted sufficient factual allegations to support an alter ego theory.  Plaintiffs' theory is based on allegations that ELCA is

entwined in a close relationship with AFP as evinced by ELCA's tight control of AFP, AFP's misleading statements, which were known to ELCA, and by the transfer of a revenue source worth $10 million (The Lutheran magazine), all while AFP was underfunding its pension plan apparently due to financial distress.

Plaintiffs have also alleged facts that raise questions as to AFP's solvency at the time of the termination and as to corporate siphoning. AFP disclosed that the Plan had been underfunded for nine years, and that during the previous six years, the underfunding had exceeded $10 million. (See Comp., Ex. E.) In 1999, the Plan was fully funded and AFP had $18 million in reserves, yet at the end of 2004, AFP had only $84,000 in reserves. At around that time, some transfer of interest or revenue occurred involving AFP's magazine, The Lutheran, and the ELCA. (Comp. ¶ 192.) Before the transfer, the magazine generated $10 million or more in annual revenue. (Id.)

There are also allegations as to misconduct. Plaintiffs allege they were misled in two ways about the Plan. First, they were misled into believing they would receive pensions. Plaintiffs were repeatedly given written statements that they would receive pension benefits when they retired. Second, AFP's CEO

frequently described AFP and ELCA as partners, which implied that AFP and

ELCA would stand together, look after each other and their employees.

Accordingly, ELCA's motion to dismiss Counts X, XI and XII on the basis

that Plaintiffs failed to state a claim as to alter ego liability will be denied.

### b.      Minnesota Consumer Fraud Act ("MCFA")

The MCFA prohibits "[t]he act, use, or employment by any person of any

fraud, false pretense, false promise, misrepresentation, misleading statement or

deceptive practice, with the intent that others rely thereon in connection with the

sale of any merchandise, whether or not any person has in fact been misled,

deceived, or damaged thereby, is enjoinable . . ."   Minn. Stat. § 325F.69, subd. 1.

Claims asserted under the MCFA are to be construed broadly, to

encourage the aggressive prosecution of statutory violations.  Kinetic Co. v.

Medtronic, 672 F. Supp. 2d 933, 945 (D. Minn. 2009).  The statute applies,

however, only to those that can "demonstrate their cause of action benefits the

public."  Id. (quoting Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000)).  Any

person injured by a statutory violation can bring suit, and the private remedies

provided thereunder are not limited to purchasers or consumers.  Group Health

Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 8 (Minn. 2001).

ELCA moves to dismiss the MCFA claim[2] as Plaintiffs have failed to allege

fraud in connection with the sale of merchandise.  Rather, Plaintiffs only allege

that AFP distributed written statements promising employees a defined benefit

pension plan.  AFP employees made no contributions to the Plan, however, it

was solely a benefit conferred on them by AFP as their employer.  Therefore, the

alleged misrepresentations did not occur in connection with the sale of

merchandise.  See Cooperman v. R.G. Barry Corp., 775 F. Supp. 1211, 1213-14 (D.

Minn. 1991) (finding that where fraud relates to employment relationship, there

is no sale of merchandise upon which to base a MCFA claim).  ELCA further

asserts that Plaintiffs are not consumers for purposes of a MCFA claim.  See Popp

Telecom, Inc. v. American Sharecom, Inc., 361 F.3d 482, 493 (8th Cir. 2004)

(finding that sellers cannot bring a claim under the MCFA); Kovatovich v. K-

Mart Corp., 88 F. Supp. 2d 975, 985 n.4 (D. Minn. 1999) (fraud claims arising from

employment are not recognizable under MCFA, as plaintiff is not a consumer in

those circumstances).

Finally, ELCA argues that this claim does not benefit the public.  Claims

under the MCFA must benefit the public at large, not just a large number of

---

[2]AFP joins ELCA's motion to dismiss the MCFA claim.

persons.  See Summit Recovery LLC v. Credit Card Reseller, LLC, Civ. No. 08-

5273 (DSD/JSM), 2010 WL 1427322, at *5 (D. Minn. 2010) (finding that an email

concerning the sale of subperforming consumer debt, sent to 2,000 people, is not

of general interest and therefore not directed to public at large).  Here, the alleged

fraud was directed to the Plan's participants, which Plaintiffs allege consists of

approximately 500 persons.  Because the Plan was not offered to the general

public, ECLA argues that Plaintiffs have failed to state a claim under the MCFA.

Plaintiffs argue that the MCFA defines merchandise to include intangibles,

like loans, insurance and investment contracts.  Force v. ITT Hartford, 4 F. Supp.

2d 843, 859 (D. Minn. 1998) (finding that MCFA covers insurance products);

LeSage v. Norwest Bank, 409 N.W.2d 536, 539 (Minn. Ct. App. 1987) (finding the

MCFA applies to investment contracts).  Plaintiffs argue that here, as participants

to the Plan, they were buying an intangible right to future payments through a

vehicle provided by AFP; in other words they purchased the pension benefit

through their work and reduced wages.  Plaintiffs further argue that they are

consumers because they are in the position of purchasers of this intangible right

to future payments.  It is of no importance that it arises in the context of an

employment relationship.  See Carlock v. Pillsbury Co., 719 F. Supp. 791, 850 (D.

Minn. 1989) (involving an action between franchisees and franchisors regarding the sale of ice cream). See also, Group Health, 621 N.W.2d at 11 (case involving HMO seeking damages for increased service).

The Court finds that Plaintiffs have failed to state a claim under the MCFA. While the Court must construe the statute broadly, it is clear that the provision of employment benefits are not construed as a "sale of merchandise" as contemplated under the MCFA. See Cooperman, 775 F. Supp. at 1213-14; Kovatovich, 88 F. Supp.2d at 985 n.4. In addition, the provision of benefits to AFP employees is not a benefit conferred on the general public. See Kinetic, 672 F. Supp. 2d at 945; Summit Recovery LLC, 2010 WL 1427322, at *5. Accordingly, the Court finds that Plaintiffs have failed to state a claim under the MCFA and that Count 12 must be dismissed.

IT IS HEREBY ORDERED that Defendant ELCA's Motion to Dismiss [Doc. No. 10] and AFP's Motion to Dismiss [Doc. No. 12] are GRANTED as follows:

1.      Counts I-VI and XII are DISMISSED with prejudice.

Date: January 27, 2011

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court